264 So.2d 387 (1972)
John F. BANKS
v.
Mrs. Renza Taussig JUNK, Executrix of the Estate of Mrs. Renza Brown Banks.
No. 46744.
Supreme Court of Mississippi.
June 19, 1972.
*389 Adams, Forman, Truly, Ward, Smith & Bramlette, Natchez, for appellant.
R.L. Netterville, Natchez, for appellee.
*388 SUGG, Justice.
Mrs. Renza Brown Banks, a resident of Adams County, Mississippi, hereinafter referred to as decedent, died on January 26, 1968 leaving her last will and testament dated July 20, 1966.
She left her only child, Mrs. Renza Taussig Junk, by specific devise and bequest, all of her Louisiana property, her home in Adams County including all furnishings, furniture, silver, china, linen and other objects therein owned by her, subject to the right of her husband, John Francis Banks, to use, occupy and enjoy the home and contents, rent free as long as he lived and remained unmarried. She also devised to her husband, out of the property not theretofore devised, an undivided one-half interest not to exceed in value the sum of $15,000 granting the executrix the option of paying the devise in cash. She also devised and bequeathed to her daughter the residue of her estate.
On February 21, 1968 appellant renounced the will and thereafter Mrs. Renza Taussig Junk, executrix of the estate, hereinafter referred to as appellee, filed a petition to appoint commissioners to ascertain the net value of the properties belonging to the estate of testatrix in Mississippi and to ascertain and evaluate the separate estate of appellant, and alleged that appellant owned an estate equal in value to an undivided one-half interest in the Mississippi property of decedent.
Appellant filed a response to the petition in which he prayed that the court appoint commissioners to ascertain the value of decedent's estate and the value of appellant's separate estate and that the commissioners be instructed to include in their evaluation the property of decedent located both within and without the State of Mississippi.
Thereafter appellee furnished an inventory of the Mississippi property of decedent and claimed in the inventory certain articles of personal property as her individual property by virtue of a gift inter vivos made to her by decedent.
Appellant then filed a petition to compel appellee to file a perfect inventory, and denied that any of the property claimed by appellee had been given to her by decedent before her death except certain personal property which was admitted to be the property of appellee by virtue of a gift from decedent.
The trial court held that the appellee had the burden of proving a valid gift inter vivos of the articles claimed by her; that she failed to sustain the burden of proof and was ordered to include in the inventory of the property of the estate all of the articles of personal property claimed by her as gifts.
With respect to the Louisiana real property, the court held that it was not affected *390 by the renunciation of the will; that the court had no jurisdiction over the Louisiana real property and had no authority to appoint commissioners to act beyond the territorial jurisdiction of the State of Mississippi; that the Louisiana real property should not be included in the evaluation of the estate in Mississippi so as to increase the total estate to effectuate an increase in the share of appellant by his renunciation of the will in Mississippi.
The court held that it had no authority to award appellant more rights by renouncing the will than would have accrued to him had decedent died intestate.
The court ordered that all estate taxes due the United States and the State of Mississippi, all debts of decedent and all costs of administration in Mississippi be paid out of the residue of the estate in Mississippi, and that the Louisiana inheritance tax, together with all costs of administration in Louisiana, be paid by appellee individually and not from any funds of the estate being administered in the Mississippi court.
The decree further found that by agreement of the parties and with the approval of the court, all controverted issues of fact and law were submitted to the court at one hearing in order to conserve time and expense, and granted an interlocutory appeal in order to settle the controlling principles of law in the case.
Appellant assigns as error the following:
(1) The court erred in not ordering that the Louisiana property of Mrs. Renza Brown Banks be included in the evaluation of her estate for the purpose of determining the share of the estate to go to Appellant under his renunciation of the Will.
(2) The court erred in holding that there was a residue in Mississippi from which all United States Federal estate taxes must be paid.
(3) The court erred in not ordering that the lawful share of Appellant be determined before deduction of Federal and State Estate Taxes and in not ordering that his share bear no part of this tax.
(4) In the alternative, the court, after failing to hold that Appellant's share bore no part of the Estate Tax, erred in not ordering on equitable apportionment of Federal Estate Taxes between Appellant and Appellee.
Appellee assigns as error the following:
(1) The trial court erred in not holding that there was a valid gift inter vivos.
(2) The trial court erred in not holding that there was a valid delivery to the Executrix during the lifetime of the testatrix.
(3) The trial court erred in not holding that the burden was upon the contender to prove the Executrix's inventory was incorrect.
(4) The trial court erred in allowing Mr. John F. Banks to testify in violation of Section 1690 of the Mississippi Code of 1942 Ann.
After the case was tried the parties entered into a stipulation which requested the Chancery Court to determine the proper method to be adopted in distributing the assets of the estate and in computing the value of the estate. They submitted to the court the question of whether or not the value of the Louisiana real property of decedent should be included for the purpose of ascertaining the value of appellant's one-half interest in the estate less his separate estate.
The first question for determination is the effect of the renunciation of the will in Mississippi on the Louisiana property. In Doran v. Beale, et al., 106 Miss. 305, 63 So. 647 (1913) the husband who was a resident of Arkansas renounced the will of his wife who was a resident of Illinois. *391 The testatrix owned land in Mississippi and counsel for the appellees argued that when the appellant renounced his wife's will, he thereby elected to take that portion of her estate to which he is entitled under the law of descent and distribution of the State of Illinois. We held:
It is true that appellant, by renouncing his wife's will, elected to take the portion of her estate to which he is entitled under the law of descent and distribution, but not necessarily the law of descent and distribution of the state of Illinois. His election was to take that portion of her estate to which he is entitled under the law which governs the descent and distribution of her property; and the law governing the descent of real estate is the law of the place where situated. (106 Miss. at 323, 63 So. at 650.)
In Bolton v. Barnett, 131 Miss. 802, 95 So. 721 (1923) testatrix died while a resident of Tennessee and the husband renounced the will in Prentiss County, Mississippi. The Court held that the husband had the right to renounce the will in Mississippi even though he did not have the right to renounce the will in Tennessee, the domicile of the testatrix, and that, upon renunciation he was entitled to a child's part of the real and personal property in Mississippi.
In view of our holding in Doran and Bolton, supra, involving the renunciation of the will of a non-resident owning property in Mississippi, that the rights of the renouncing spouse and the heirs, devisees and legatees in the Mississippi property are to be determined by the laws governing the descent of the property where it is situated, the rights of such persons, upon renunciation of the will of a testator residing in Mississippi who owns property in other states, are to be determined by the laws of the states where such property is situated.
We hold therefore that when appellant renounced the will of testatrix in Mississippi, the law of Louisiana governs as to the disposition of the real property situated in that state. We have not endeavored to ascertain what the law of Louisiana is relative to appellant's right to renounce a will or the effect thereof upon the descent of land therein devised. The Louisiana courts are open to the parties for determination of this question and it should be made there.
We hold that the value of the Louisiana real property should not be included in the value of the estate for the purpose of determining the lawful portion of appellant of his wife's real and personal estate in Mississippi.
Appellant argues that since we held in Myers v. Laird, 230 Miss. 675, 93 So.2d 828 (1957) that the Louisiana property of a husband who renounced his wife's will in Mississippi should be included in the value of his separate property for the purpose of determining whether his separate property was equal in value to one-half of his deceased wife's estate, it would be inconsistent, contrary to the purpose of the statutes and against public policy to exclude decedent's Louisiana real property in the valuation of her estate for the determination of his lawful portion.
This contention is governed by Sections 668 and 670 Mississippi Code 1942 Annotated (1956) which are discussed in detail later in this opinion. At this point it is sufficient to note that, upon renunciation, appellant is entitled to such part of decedent's estate as if she had died intestate, subject to certain limitations hereinafter set forth, and his "lawful portion" is to be determined by the rule contained in Section 670, but his "separate property" is without statutory limitation.
Since Mississippi has no jurisdiction over the disposition of the Louisiana real property and it should not be included for the purpose of ascertaining the lawful portion of the appellant in the Mississippi property, his lawful portion should not be *392 burdened with any estate taxes due the United States because of the requirement that such taxes must be computed on decedent's entire estate.
The estate taxes will be computed on the Mississippi property as if it were the entire estate. The value of the real property in Louisiana will have to be added to the value of the Mississippi estate for the purpose of computation of federal estate taxes, but no portion of this shall be charged to appellant's lawful portion of the Mississippi estate, but shall be the sole responsibility and obligation of the appellee.
This is an equitable solution to the problem because if appellant is not to share in the Louisiana estate, or have the value of it considered in the computation of the value of the estate, he should not be charged with any of the estate taxes due the United States by virtue of the inclusion of such property in computing the value of the estate for estate tax purposes.
The next question presented is the effect of appellant's renunciation of the will on the property of decedent in Mississippi and the determination of appellant's lawful portion of decedent's estate in Mississippi.
The distribution of the estate of testatrix is governed by Sections 668 and 670 Mississippi Code 1942 Annotated (1956) as construed by decisions of this Court.
Section 668 provides that upon renunciation of the will of testatrix the surviving spouse "shall be entitled to such part of his estate, real and personal, as she would have been entitled to if he had died intestate." The statute also provides that the husband may renounce the will of his deceased wife under the same circumstances and in the same time and manner and with the same effect upon his right to share in the estate as provided for the widow. Section 670, supra, then limits the inheritance of the surviving spouse and provides a rule by which the share of the surviving spouse shall be determined.
In Gordon v. James, 86 Miss. 719, 39 So. 18 (1905) the Court construed the provisions of Section 4496, Mississippi Code of 1892 (now appearing as Section 668, supra,) and stated that upon renunciation of the will by the widow the decedent does not become "partially intestate" or "intestate as to a portion of his estate" but expressly found that upon the filing of such renunciation the widow "shall be entitled to such part of his estate, real and personal, as she would have been entitled to if he had died intestate."
In Campbell v. Cason et al., 206 Miss. 420, 40 So.2d 258 (1949) the Court held that where a widow renounced the will of her husband under Section 668, supra, the obligations of the estate and executor would be construed as if the testator had died intestate and cited Gordon, supra.
Since appellant and appellee were the sole heirs at law of decedent, it is necessary that the rule prescribed by Section 670, supra, be applied to determine the proper method of distribution of the assets of the estate. In Davis et al. v. Miller, 202 Miss. 880, 32 So.2d 871 (1947) and in Carter, Admr. v. Evans et al., 230 Miss. 803, 94 So.2d 237 (1957) the Court interpreted Sections 668 and 670, supra, and announced the rule for distribution of the estate of a decedent upon the renunciation of a will.
The rule announced by these cases is to ascertain the value of the gross estate of decedent, deduct therefrom debts of the decedent, administrative expenses and funeral expenses leaving the net value of decedent's estate. When the surviving spouse is entitled to one-half of the estate, the net value is divided by two and the net value of the estate of the surviving spouse is deducted from that figure. Any balance remaining would be the deficiency to be made up to the surviving spouse. These cases did not deal with estate taxes but the principle would be the same, and estate taxes should be taken into consideration *393 and deducted from the gross value of the estate.
It does not appear from the record that testatrix owed any debts; therefore, appellant's lawful portion of the estate, if any, shall be computed as follows:
The gross value of the estate of decedent in Mississippi shall be ascertained; from that shall be deducted the cost of administration, funeral expenses, Mississippi estate taxes and the portion of the United States estate taxes attributable to the Mississippi estate. The difference is the net value of decedent's Mississippi estate and this difference shall be divided by two; the net value of the separate estate of the appellant shall then be ascertained and deducted from the one-half of the net value of the Mississippi estate of decedent; the deficiency, if any, shall then be made up to him in accordance with the rule prescribed by Section 670, supra, which is as follows:
[T]he court in which the will is probated may appoint three commissioners to ascertain by valuation of the estate what her lawful portion thereof would be worth, and the commissioners shall also value her own separate estate, and report their valuation to the court, whereupon the court shall make the proper order for allowing her to share in her husband's real and personal estate to make up the deficiency after the following rule: If her separate property be equal in value to two-thirds of what she would be entitled to, she shall have one-third of her lawful portion of the land and one-third of what would be her distributive share of the personalty. If her separate property be worth half in value what she would be entitled to, then she shall be entitled to half her lawful portion of real estate and half of what would be her distributive share of the personalty. If her separate property be worth only one-third in value what she would be entitled to, then she shall be entitled to two-thirds of her lawful portion of real estate and two-thirds of what would be her distributive share in the personalty... .
In Gordon v. James, supra, the Court construed Section 670, supra, (then section 4499, Mississippi Code of 1892) and stated:
If the decedent had died intestate in the instant case  and by operation of the statute quoted so he did, so far as regards the rights of his widow  the widow would have been entitled to one-half of his real and personal estate under certain well-understood conditions and limitations. And they are not difficult of understanding. Upon the death of an intestate the estate, both real and personal, stands charged with the debts of the decedent  the personal estate primarily; secondarily, when the personalty is exhausted, the real estate. After the payment of debts, an heir's lawful portion of the residue vests in the widow. This is the right of the appellee in this case. The widow's lawful portion of the residue under the facts of this record is an undivided one-half. To adopt the argument of appellant that by renouncing the provision made in the will and demanding in lieu thereof her lawful portion in the estate of her husband, that thereby her share became chargeable with all of the debts of the decedent, might defeat the very end sought by the statute. In many instances, especially where the decedent leaves several children surviving him, the lawful portion of the widow in the estate would be entirely consumed in the payment of the debts due by the decedent, and thereby the widow either practically disinherited by the inadequate provision of the will, or absolutely so by having her portion devoted to the satisfaction of the creditors... . (86 Miss. 740, 39 So. 20.) (Emphasis added.)
In the instant case, Mrs. Carrie W. James, by her act of renunciation, became entitled to a one-half interest in *394 the real and personal estate of her deceased husband as if he had been an intestate. Therefore, when all of the debts of the estate have been fully paid, she will be entitled to her distributive share of one-half of all the residue of the personal property, and will become a co-tenant with each devisee, and own a half interest in each and every parcel of real estate specifically devised by her deceased husband. The contention that Rev.Code, § 4499, by making use of the expression that the widow may signify her dissent to the will and "claim to have the deficiency made up to her, notwithstanding the will," intends to convey the meaning that this deficiency between the value of her separate estate and her lawful portion in her husband's estate has to be "made up to her" in money, and that to this extent she becomes, not a tenant in common of the property, but a creditor of the estate, is manifestly unsound. The contrary intention is plainly disclosed by the clause of the section immediately following, which announces the rule whereby the court shall be governed in proceeding to make up the deficiency. That rule provides that she is to have a certain proportion of her "lawful portion of the lands" and her "distributive share of the personalty"; such interest being arrived at by a calculation based upon the relative value of her lawful portion of the estate as compared with the previously ascertained value of her own separate property. This is the interpretation which has been placed upon similar provisions in other states in the few cases which our research has disclosed... . (86 Miss. 743, 39 So. 21.)
It was held in Gordon that the separate estate of the widow did not amount in value to one-fifth of what she would lawfully have been entitled to, and since there was only one child, she was entitled to a one-half interest in the real and personal estate of her deceased husband.
If the separate property of the appellant does not amount in value to one-fifth of what he would be entitled to, appellant shall receive one-half of the net estate of decedent in Mississippi.
In computing the cost of administration, no part of the expense of the litigation of the claims shall be charged against the estate because the general rule is that an executor cannot litigate the claims of one set of legatees against the others at the expense of the estate, 4 Am.Jur.2d Appeal and Error, Section 215, 216 (1962).
This is a dispute between the appellant and the appellee as to the distribution of the property and is not a proper charge against the estate.
Appellee, by her cross-appeal, argues that the chancellor erred in failing to find a valid gift inter vivos.
We have carefully considered the proof and are of the opinion that the chancellor was not manifestly wrong in his finding that there was not a valid gift inter vivos to the appellee by decedent.
Appellee contends that the court erred in holding that she had the burden of proof to establish the personalty claimed as a gift inter vivos, and that the burden of proof was on appellant because he was attacking the inventory filed by her as executrix.
We recognize the general rule that the burden of proof is on one claiming that there are assets of an estate not included in the executor's inventory; however, in this case appellee was claiming the excluded assets as a gift inter vivos.
In Lindeman's Estate v. Herbert, 188 Miss. 842, 193 So. 790 (1940) appellants claimed certain stock through Julius A. Mosal, one of the executors, as a gift inter vivos to Mosal. The stock in question was *395 omitted from the inventory and the Court held that the burden of proof was on those claiming through Mosal to prove that the stock was not a part of the assets of the estate being administered.
The same question is involved in this case and the chancellor correctly held that the burden of proof was on appellee to establish a valid gift inter vivos.
Appellee also assigns as error the fact that appellant was permitted to testify with reference to the facts pertaining to the gift inter vivos in contravention of Section 1690, Mississippi Code 1942 Annotated (1956).
This precise question was presented in Ford v. Byrd, 183 Miss. 846, 184 So. 443 (1938) where the issue of fact being tried was whether certain bonds were a part of the estate of testatrix or belonged to appellee by virtue of a gift thereof from the testatrix during her lifetime. The Court, in passing on the question, stated:
The claim that produced this issue  the only one being asserted against Mrs. Wehmeyer's estate  was the claim of the appellee that the bonds belonged to her, and were not a part of Mrs. Wehmeyer's estate. Evidence negativing this claim, therefore, would not be in support of a claim by anyone against the estate; consequently, if her testimony is limited to facts that negative the appellee's ownership of the bonds and show that they were a part of Mrs. Wehmeyer's estate, the appellant would not be testifying in support of any claim of hers against Mrs. Wehmeyer's estate, and, therefore, would be competent to so testify. That she is a distributee of this estate and therefore might be benefited by her testimony does not make her an incompetent witness under the statute. Cock v. Abernathy, 77 Miss. 872, 28 So. 18; Sweatman v. Parker, 49 Miss. 19. (183 Miss. 858, 184 So. 447.)
Affirmed in part, reversed in part and remanded for further proceedings not inconsistent with this opinion.
RODGERS, P.J., and BRADY, PATTERSON and SMITH, JJ., concur.